RECEIVED

2015 DEC 21  AM 10: 45

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| PAMELA MOSES, et. all individually | } | |
| and on behalf of others similarly situated. | } | |
| **Plaintiff,** | } | |
| | } | Complaint **#2:15-cv-02806-JDT-dkv** |
| vs. | } | |
| AMY WEIRICH | } | |
| RICHARD DESAUSSURE | } | **Jury Trial Demand** |
| BILL OLDHAM | } | |
| ROBERT MOORE | } | |
| CITY OF MEMPHIS {MPD} | } | |
| Mayor AC WHARTON | } | |
| and Does Inclusive 1-103 in their | } | |
| personal and official capacities. | } | |
| **Defendants.** | } | |

## AMENDED COMPLAINT

This is a Civil Rights Class Action for money damages and injunctive relief arising under 42 U.S.C.§ 1983, the United States Constitution, 18 U.S. Code § 242 - Discrimination, Retaliation, Deprivation of rights under color of law and the Constitution and laws of the State of Tennessee. This action is brought against the City of Memphis Mayor AC Wharton MPD (hereinafter "the City"), Shelby County Sheriff Bill Oldham (hereinafter "Bill Oldham"), Shelby County District Attorney AMY WEIRICH (hereinafter "Weirich") Shelby County Criminal Court Clerk RICHARD DESAUSSURE (hereinafter "Criminal Court Clerk") Chief Jailer of Jail East ROBERT MOORE  (hereinafter "the Jail", and all Command Personnel and policymakers, including former employees who knowingly, intentionally falsely arrested, imprisoned and violated the Civil Rights of approximately 25 or more citizens in Shelby County after December 18, 2014.

Plaintiffs request a trial by jury in this case.

1

## JURISDICTION AND VENUE

1. Plaintiffs incorporate by reference the averments contained in Paragraphs 1through 2 of this complaint.

2. This is a Class Action suit for damages to redress the United States Constitution, and other federal causes of action, the Tennessee Constitution, and Tennessee statutory law and common law jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C. § 1983 et seq.; the Judicial Code, 28 U.S.C. §§ 1331 and 1343(a); and the Constitution of the United States.

3. All of the acts and omissions complained of herein occurred in Shelby County, Tennessee, within the jurisdiction and Venue is proper in the Western District of Tennessee as the events complained of occurred in this district.

4. Plaintiffs invoke pendent and supplemental jurisdiction of this court pursuant to 28 U.S.C. §§ 1331-1367

## PARTIES

### A. The Plaintiffs.

5. Plaintiff incorporates by reference the averments contained in Paragraphs 1 through 4 of complaint.

6. Plaintiffs at all times relevant were and are residents of the United States who were in Memphis, Tennessee on December 18, 2014.

7. Plaintiffs Pamela Moses and the others sue on behalf of themselves of the class and members of the class. Hereinafter they will be referred to as "Class Plaintiffs."

8. Plaintiff Pamela Moses sues on her own behalf. Hereinafter they will be referred to as Individual Plaintiff.

### B. The Defendants.

9. Defendant City of Memphis is a municipal corporation, duly incorporated under the laws of the State of Tennessee, is the employer and principal of the individual Defendants and is responsible for the policies, practices and customs of the Memphis Police Department employees, its Office of Professional Standards, its Personnel Division, its dispatch Patrol Division and its Police Department.

10. Defendant AC Wharton is, and at all times relevant herein was, of the City of Memphis, with responsibility for supervising, training, assigning, administrating and controlling all officers and employees of the CPD.  Former Mayor AC Wharton held a command and/or policymaking position and he along with other Command members identified below, participated in the planning, supervision, and the execution of the Memphis police conduct complained of herein. He is sued in his individual capacity.

11. Defendant Amy Weirich is, and at all times relevant herein was, the elected District Attorney of Shelby County with responsibility for supervising, training, assigning, administrating and controlling all officers and employees of the Shelby County District Attorney Office and held a command and/or policymaking position and he along with other members sworn to uphold the law, participated in the planning, supervision, and the execution of the prosecuting the unlawful behavior relating to official duties by an officer entrusted with the administration of justice or the execution of the law.  The prosecution of intentional or corrupt failure, refusal, or neglect of an officer to perform a duty imposed on the by-laws of Tennessee.   She is sued in her individual capacity.

12. Defendant, Bill Oldham is currently the elected Shelby County Sheriff of Shelby County, and at all times relevant herein was, the acting Sheriff of the Shelby County Sheriff Office & Department, and the First in Command under the laws of Shelby County, with responsibility for supervising training, assigning, administering and controlling all officers and jail employees of the SCSO.  Bill Oldham held a command and policymaking position, and he along with other Command members identified below, participated in the planning, supervision, and the execution of the police conduct complained of herein. He is sued in his individual capacity.

13. Defendants RICHARD DESAUSSURE, at all times relevant herein, was the elected Criminal Court clerk and an employee of the Shelby County Criminal Court clerk who held supervisory, command and/or policy making positions, and who participated in the authorization, planning, supervision, and the execution of the Deputy Court Clerk's conduct complained of herein. Additionally, upon information and belief, one or more of these Defendants failed, with deliberate indifference to Plaintiffs' and class members' rights, to adequately train and supervise Criminal Court Clerk employees who were involved in violating the rights of the Plaintiffs and class members.  Additionally, each of

these Defendants signed, authorized their name to be signed, or had their names appear on a false criminal complaint or arrest report against one or more of the Plaintiffs or class members. These Defendants are sued in their individual capacities.

14. Defendant Robert Moore was an employee of the Shelby County Jail who held supervisory, command and/or policy making positions, and who participated in the authorization, planning, supervision, and the execution were employees of the Shelby County Jail who participated in the execution of the Jail actions complained herein. These Defendants are sued in their individual capacities.

15. Does 1 through 95, at all times relevant herein, were employees of the Shelby County Government and the City of Memphis in the State of Tennessee who participated in the execution of the false arrest, deprivation of Constitutional rights under the Color of State Law, and all police actions complained herein. Additionally, upon information and belief, one or more of these Defendants used excessive force on one or more of the Plaintiffs. The true names and identities of Defendants are unknown to Plaintiffs, as they are inclusive, who therefore sue these Defendants by such fictitious names.

16. Plaintiffs will seek leave to amend their complaint to show the true names and identities of these Defendants when they have been ascertained. These Defendants are sued in their individual capacities.

17. At all times relevant herein, all of the individual Defendant officers and employees were acting under the Color of Law, under color of authority and in the scope of their employment as Tennessee, Public Officials, Police Officers, Command, and Supervisory Personnel.

18. Each of the Defendants caused, and is responsible, for the unlawful conduct described herein, and resulting injuries by, among other things, personally participating in the unlawful conduct or acting jointly or conspiring with others who did so; by authorizing, acquiescing in or setting into motion, policies, practices, plans or actions that led to the unlawful conduct: by failing and refusing to initiate and maintain adequate training and supervision with deliberate indifference to Plaintiffs' and class members' rights; and by ratifying the unlawful conduct that occurred by agents and officers under their direction and control, including failing to take remedial or disciplinary action.

## CLASS ALLEGATIONS

19. Plaintiffs incorporate by reference the averments contained in Paragraphs 1 through 18 of this complaint.

20. Plaintiffs and the Class bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure; Plaintiffs herein seek to certify a class and two subclasses stemming from the class.

21. The class (class A) consists of all persons who were and detained and arrested by the Defendants on or after December 18, 2014, in 201 Poplar, Memphis, TN and 6201 Haley Rd. Memphis, TN 38134 in Shelby County, Memphis, TN (hereinafter the "Jail"). Each single class member was detained, arrested, not given Due Process, not brought before a Magistrate or Judge, arrested of a person without probable cause that that person committed a crime, arrest without the mention of the suspect's Miranda Rights, arrest without just cause or valid arrest warrant, arrest with an arrest warrant that was obtained with false information given to the court by a police officer, arrest by incompetence, arrest for personal gain, arrest based on race, arrest based on pure malice. Subclass A-1 is defined as all class members who were seized and detained by the Defendants in Jail area for 3 and a half to three hours or more before they were allowed to make a phone call and or have Bail set. This subclass consists of approximately 250 or more people.

22. Subclass A-2 is defined as all class members inclusive of A-1 who were seized, detained, arrested, and taken into police custody by the Defendants and remain in Jail. These individuals have not been released as of this filing, and all hearings are held in secrecy and closed courts. This subclass consists of approximately 250 people.

23. The class and each subclass meets the requirements of FRCP 23(a), as follows:

a). The requirements of Rule 23(a)(1) are satisfied because the class, and each of the subclasses, are sufficiently numerous that joinder is impractical There are approximately 250 class members or more.

b). The requirements of Rule 23(a)(2) are satisfied because there are questions of law or fact common to the class and each of the subclasses. The common questions of law include, but are not limited to:

• Whether Plaintiffs and class members were seized when the Defendants falsely arrested them in the Jail, detained them for hours, deprived them the freedom to leave in violation

of their Fourth Amendment rights to be free from unreasonable search and seizure, and other constitutional and common law rights;

• Whether the Defendants lacked the requisite probable cause to seize Plaintiffs and class members in Shelby County Memphis, Tennessee, thereby violating their Fourth Amendment rights to be free from unreasonable search and seizure, and other constitutional and common law rights;

• Whether the Defendants lacked the requisite probable cause to arrest and take Plaintiffs and class members into custody and detain them at police stations thereby violating their Fourth Amendment rights to be free from unreasonable search and seizure, other constitutional and common law rights;

• Whether the Plaintiffs and class members were targeted for exercising their rights to freedom of speech, on Social Media, and or in Public, as guaranteed by the United States and Tennessee constitutions;

• Whether the Plaintiffs and the class members who were engaged in lawful First Amendment activity on Social Media and the anywhere in public were acting reasonably within a lawful manner, not provided any alternative channels for their expression;

• Whether Defendants violated Plaintiffs' and class members' rights to freedom of expression, association, and assembly were violated when Defendants falsely detained, arrested and imprisoned Plaintiffs and class members for Social Media such as Facebook, Twitter or Google

• Whether the decision to initiate or conduct the false arrests and the orders concerning the manner in which Plaintiffs and the class members were to be illegally detained, and arrested were made by officers of sufficient rank, authority, influence, and discretion that they can be deemed policymakers under Monell and its progeny;

• Whether an injunction should be granted in favor of Plaintiffs and the class members directing the Defendants to seal, return and/or destroy all records of Plaintiffs and class members arrests and detentions as alleged herein;

• Whether Defendants, including high-ranking officials of the Shelby County, conspired and agreed and/or otherwise acted jointly among and between themselves to not act expeditiously in the time frames prescribed by law and unlawfully detain, arrest and imprison Plaintiffs and the class; and

• Whether Defendants maliciously prosecuted members of the class by filing false charges of Tampering With Evidence, Intimidating a Juror, Impersonating a Licensed Professional, Unauthorized Practice of Law, Assault, Stalking, Harassment, Disorderly Conduct, any other charges not discovered, and specifically by falsifying the arrest reports, indictments, warrants, capias, and criminal complaints by signing the names of members and signing the names of the Magistrate, Judges, Grand Jury Foreman, who did not have personal knowledge of a Plaintiffs' or class members' alleged conduct.  The common questions of fact include but are not limited to:

• Whether the Defendants falsely arrested, falsely imprisoned, detained the Plaintiffs and class members preventing them and denying their Constitutional rights

• Whether Defendants failed to execute proper arrest documents, including the completion of arrest reports and criminal complaints signed by officers with the requisite personal knowledge of the offense allegedly committed by a class member in violation of the arrest and detention policies;

• The nature and extent of the confinement conditions, including the denial of food, medical care, phone calls, necessary toiletries, feminine hygiene products, and the spatial conditions cells;

• The existence, nature and extent of the "Code of Silence," as alleged herein;

• The existence, nature and extent of the tacit and de facto policy of the Shelby County Government to intimidate abuse and harass persons who speak against elected officials and protests over the course of several years in the City of Memphis;

 d) The requirements of Rule 23(a)(3) are satisfied because Class Plaintiffs' claims are typical of the claims of the class and each subclass they seek to represent.

 e) The requirements of Rule 23(a)(4) are satisfied because the representative parties will fairly and adequately protect the interest of the class and each subclass they seek to have represented. The Class Plaintiffs have no interests antagonistic to other members of the class or subclass they seek to represent. Moreover, Class Plaintiffs will request the appointment of counsel experienced in bringing class actions and civil rights claims.

24. The class and each of the subclasses meet the requirements of Rule 23(b)(1) because prosecution of separate actions by individual members of the class would create a risk of inconsistent or incompatible standards of conduct by the Defendants.

25. With respect to the claims for injunctive relief, the requirements of Rule 23(b)(2) are satisfied because Defendants have acted on grounds generally applicable to the class and subclasses, and injunctive relief for the class as a whole is appropriate.

26. Additionally, the class and each of the subclasses meet the requirements of Rule 23(b)(3) because common questions predominate over individual questions and prosecution of this action as a class action is the superior method of adjudication. Factors that militate in favor of certification under Rule 23(b)(3) include:

    • it is desirable to concentrate the litigation in the United States District Court for the Western District of Tennessee because the events occurred in this district and involve federally-protected rights;

    • certification of the class and subclasses will achieve greater economies of time, effort and expense and promote uniformity of decisions for the members of the class, thereby making a class action the superior method of adjudicating this controversy.

27. Plaintiffs have moved for class certification and seek certification in accordance with the class and subclasses defined in this complaint.

28. Plaintiffs incorporate by reference the averments contained in Paragraphs 1 through 27 of this complaint.

## FACTUAL ALLEGATIONS

### A. MOSES-Lead Plaintiff

On Wednesday, December 17, 2014, the Memphis Police Department came on the private property of 804 Holly Street. The unidentified Memphis Police officers, banged on all the doors of the 2 story house. Ms. Lois Miller a resident of the private property answered the door on the Jackson Ave side of the house and the police began questioning her about who lived in the house and who did the vehicles belong to, and was the owner at home. Ms. Lois told the unidentified men several people lived in the house and the owners of the home and vehicles were not at home. She asked them what were these questions in reference too. The Memphis Police said they were trying to serve papers and wanted to know about the cars. Ms. Lois asked them, "When did the Memphis Police Department begin serving papers?" The Memphis Police then

exited the private property quickly without incident.  On Thursday, December 18, 2014, armed men dressed in camouflage and bullet-proof vest stormed to the private residence of 804 Holly Street.  Plaintiff and her 6-year-old were sitting on the couch.  Immediately upon entry, the man said, "Yea Pamela we know who you are we got a warrant"  Plaintiff asked the armed men could she see the warrant and requested to know who had issued it and what it was in regards to and why.  All 3 officers were standing in her living room.  They each looked perplexed and then the black male who appeared to be in charge wearing a gold badge on his bulletproof vest, then instructed the 2 white officers to put the shields, weapons, and batter ram back up in the car. He stated we don't need that anymore.   The officer who appeared to be in charge stated they had a warrant.  Plaintiff again requested that they produce a physical copy so she could know what she was allegedly wanted for because they were standing on private property, and that she would not consent to the search of the private premises until they produced a valid warrant.  At this time, Plaintiff, called her 68-year- old father and asked him to come to the residence immediately. Moses believed she was being falsely arrested again and became numb because her child was confused and crying because he had been taught the police were his friends.  Moses was not sure if these men were, in fact, officers because they never identified themselves with any department and were wearing camouflage, holding guns, and would not tell her what she was being charged with and why.  Moses had a scheduled court appearance for December 19, 2014, in regards to an arrest from an alleged Disorderly Conduct charge which stemmed from a Judge Joe Brown fundraiser, {Brown was running for District Attorney} an alleged Escape of Misdemeanor of Incarceration, which was the result of a false arrest under the instructions of Judge Phyllis Gardner a General Sessions Civil Judge {Moses was Campaigning for Myra Hamilton, Gardner's opposition}.  Gardner had sought an order of protection against Moses after the election to prevent Moses from discussing her personal and political beliefs of elected officials on Facebook.  All 3 of these matters that were set for the following day had been re-scheduled by the Honorable Judge Paul Summers {Special Senior Judge from Nashville} to February 9, 2015, on December 17, 2014.  Moses had posted bond for these charges and had been present for every court appearance and was waiting Due Process and exoneration of all false charges.

The unidentified white officer then said, "We got an email from the District Attorney's office to come get you for harassing and intimidating a juror."  Again, Plaintiff requests that the man call a supervisor because she preferred to have what they were saying to her in writing.

Moses as a community activist informed the officers if she were under arrest, that she had a right to know what she was charged with and because they were on private property they must produce a valid arrest warrant to her that was signed by a judge, detailing what the charges were in order for this to be a lawful arrest pursuant to Tennessee Rules of Law and Criminal Procedure. At this point, the small child was hungry and in tears and asked the men "was his mommy going to jail." Plaintiff and the child were preparing for dinner prior to the unlawful entry, detention and intrusion. Plaintiff was upset because she was also preparing for the child's Christmas program, which he was singing in the next day.

Plaintiff's father arrived immediately and called the minor child's Aunt. The Aunt was a witness to the unlawful detention and arrest. She lives around the corner and took Plaintiff's small child with her because what he was witnessing was so traumatic. Plaintiff and her father had never encountered law enforcement in their home in such an intrusive manner. Plaintiff's father asked the officers what did his daughter do and what was the charge, they told him also they received an email, and the white officer pulled out his phone and showed a picture and writing on his smartphone which referenced a Harassment charge and email that said "Get Pamela Moses". Plaintiff's father told her to just go with them and that he would make her Bail once she was processed at the Jail. Plaintiff was terrified because the officers were not driving a police vehicle and she did not believe they were real law enforcement and demanded to see identification since they could not produce a warrant. The men could not produce a search warrant or arrest warrants were driving a white 3 door Toyota FJ Cruiser.

At this point, the man in camouflage who was acting as if he was in charge then instructed Plaintiff to stop cooking and to put on a jacket so she could go with them now. He called someone on his phone when he realized Moses was not going to go willingly. At this point, a uniformed SCSO came into Plaintiff's house; he was driving a white, marked, 4 doors, SCSO, SUV Chevrolet. He immediately recognized Plaintiff from many pleasant encounters with her at Shelby County Law Library and that officer stated, "We didn't know this was for her, I'm gonna take her in you all can go I got this." Plaintiff then asked the uniformed SCSO did he have the warrant, he said, "No, they got it on file they don't give them to them." He stated this was "a fugitive call so it was done secretly no one would have it". The comment made under the color of the law that Plaintiff was a *fugitive* or that I was under a secret indictment was used as a means to place Plaintiff in fear and intimidate her if she did not cooperate and leave

willingly that she would be shot and killed because she was an alleged fugitive. Plaintiff called her Attorney Michael Working and told him what was happening and he check the computer and said he "did not see a warrant, but he would make more calls to the clerk of records, and have her arraigned 1st thing in the morning." Plaintiff was transported in handcuffs and taken to the Shelby County Jail east location. Plaintiff was booked and process at approximately 8:00 pm. Moses was strip searched and humiliated by the jail employees. Plaintiff was never formally told what she was charged with nor provided copy of the charges. Plaintiff requested the Chief Jailer tell her what she was charged with and why she was not being seen by the Magistrate or brought before a judge. Each jail employee informed Plaintiff they couldn't do anything because this was a secret indictment, that came from Criminal Court, and that she had to see a Criminal Court judge. Plaintiff demanded to be brought before a judge and know what she was charged with and each employee told her she would have to wait until after the New Year's because Criminal Court was closed. Plaintiff never saw a judge or Magistrate and was held in solitary confinement. Plaintiff was held without bond.

### B. THE CLASS

29. Defendants, acting under the Color of State Law, strip searched, unlawfully detained and imprisoned members of The Class when they brought them into custody, held them in solitary confinement, did not afford them a timely arraignment, and violated their Fifth Amendment for Due Process Fourteenth Amendment for Equal Protection, and violating, Eighth Amendment not setting Bail which all citizens regardless of race have an absolute right to have. Based on information and belief, during the false imprisonment, Plaintiff observed and obtained an overwhelming list of over 250 individuals being denied Due Process, and held without Bail, and or on Excessive Bail, based on their race and socioeconomic statuses. The bail in Shelby County is not set in accordance with statute T.C.A. § 40-11-105. Right to Bail; powers and duties in violations of The Bail Reform Act of 1984.

30. Over hundreds of African-Americans and other poor minorities are arrested in Shelby County and under the direct instructions of "Weirich" to law enforcement officers where they are instructed to charge the person with a *felony* regardless of the offense, to ensure the setting of a high bail and guaranteed conviction. Weirich also has instructed the

Assistant Attorney Generals who have taken an oath to uphold the law to treat African American Defendants differently by informing their attorney that they will not make any plea agreements with their clients and that they must plead to the *charged* offense to ensure a guaranteed felony.  This is known in Shelby County as "NO DEALS" {See Exhibit A}.

31. All persons included in the Class stems from all, but not limited to the Arrest of the wrong person, Arrest of a person without probable cause that that person committed a crime, Arrest without the mention of the suspect's Miranda Rights, Arrest without just cause, Arrest with an arrest warrant that was obtained with false information given to the court by a police officer, Arrest by incompetence, Arrest for personal gain, Arrest based on race, Arrest based on pure malice.  Any individuals with non-violent charges or misdemeanors who were strip searched by jail officers.

## C. The Unlawful Detention and Arrests

32. Plaintiffs incorporate by reference the averments contained in Paragraphs 1 through 31 of this complaint.

33. In Jail, pursuant to orders issued by the Defendants Command Personnel, individual Defendants, and Defendant Does violate the constitutional rights, by denying The Class Due Process in every stage of the arrest.  Defendants forcefully detained The Class and are holding them unlawfully in Jail.

34. Individual Defendants and Defendant Does, pursuant to orders, entered their homes unlawfully without warrants and arrested over 200 individuals, comprising subclasses A-1 and A-2.

35. In some cases, Defendant Does forcefully entered the members' homes with batter rams shields, weapons, and forcefully dragging people out of their private residence or vehicles.

36. Individuals in subclasses A-1 and A-2 were never Mirandized at their arrest, told what they were under arrest for or provided with a copy of the arrest warrant.

37. Individuals in subclasses A-1 and A-2 were taken into police custody, handcuffed, taken to police vehicles and transported to either 201 Poplar Ave. or 6201 Haley Road.

### C. The Manner of Confinement

38. Plaintiffs incorporate by reference the averments contained in Paragraphs 1 through 37 of this complaint.

39. Eventually, after days or hours of detention, Defendants may or may not be seen by a Magistrate or Judge.

40. Subclass A-1 and A-2 members were required to provide information to Defendants concerning their identities, employment and other matters which were recorded on official police reports and continue to be maintained by Defendants.

41. Class members were subjected to verbal abuse, neglect and unreasonable conditions of confinement at the police stations, including but not limited to: being deprived of food, telephone communication, medical treatment, necessary toiletries and feminine hygiene products.

42. Class members were confined in overcrowded and ice cold cells for extended and unreasonable periods of time. These detention times range from four (4) hours to indefinitely.

43. Certain members of subclasses A-1 and A-2 were deprived of needed medical treatment and necessary medication.

### D. The Filing of False Reckless Conduct Charges and Malicious Prosecution

44. Plaintiffs incorporate by reference the averments contained in Paragraphs 1 through 42 of this complaint.

45. Members of subclass A-1 were released without charges due to the coerced plea agreements, the posting of an excessive Bail.

46. Defendants conspired to have their Bail set by other corrupt judicial officials not named in this complaint but others.

47. Members of subclass A-1 were charged with felony charges and further detained until they agreed to conditions of the excessive bail which include drug testing.

48. Many of the members of subclass A-2 Bail were set anywhere from 100 Hundred Thousand Dollars ($100,000.00) to Two. Five Million (2,500,000.00) Dollars.  Members of subclass A-2 were subsequently forced to appear in court and defend against the false charges without proper legal representation because Weirich has threatened the Shelby

County Public Defender's Office and intimidate attorney who attempts to represent their clients zealously.  Weirich has also engaged in illegal wiretapping of retained attorney's phone calls and authorized her Assistant District Attorney's to monitor and record the attorney phone calls from the jail of Global Tel Link.  Attorney Bryce Phillip did listen to attorney phone calls of Plaintiff Moses while she was in jail.

### E. The Conspiracy Among Defendants

49. Plaintiffs incorporate by reference the averments contained in Paragraphs 1 through 48 of this complaint.

50. Defendant Weirich's command and personnel including, City of Memphis Mayor AC Wharton (hereinafter "the City"), Shelby County Sheriff Bill Oldham (hereinafter "Bill Oldham"), Shelby County District Attorney AMY WEIRICH (hereinafter "Weirich") Shelby County Criminal Court Clerk RICHARD DESAUSSURE (hereinafter "Criminal Court Clerk") Chief Jailer of Jail East ROBERT MOORE and other high-ranking officials of the CPD, conspired and agreed together and to keep Plaintiff and the class falsely imprisoned.  All Defendants had a duty in their official capacity and took sworn oaths to uphold the law and while acting under the Color of State law all Defendants jointly acted and/or conspired among and between themselves, to and unlawfully imprison The Class; they further conspired and agreed to arrest and further detain members of the class in Jail for the profit of Corporations such as Aramark which county employees have stock and stand to profit and gain from the mass incarceration of minorities in Shelby County; and they further conspired and agreed to falsely prosecute class members with false criminal charges.

### COUNT I

**[42 U.S.C. § 1983 Claim for False Detentions, Arrests and Imprisonments) (Brought by all Class Plaintiffs, Individually and on Behalf of the Class and all Subclasses, and all of the Individually Named Plaintiffs**

51. Plaintiffs reallege paragraphs 1 through 50.

52. The actions of the Defendants BILL OLDHAM, ROBERT MOORE, CITY OF MEMPHIS  Mayor AC WHARTON MPD, other individual Defendants identified herein

and Does in falsely detaining, arresting and imprisoning Plaintiffs without reasonable suspicion or probable cause violated their Fourth Amendment rights to be free from unreasonable search and seizure under the United States Constitution, and thus violated 42 U.S.C. § 1983.

53. The actions of the Defendants were the direct and proximate cause of the violations of Plaintiffs' Fourth Amendment rights, bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of liberty, loss of income, and legal expenses, as set forth more fully above.

WHEREFORE, pursuant to 42 U.S.C. § 1983, Plaintiffs demand a preliminary and permanent injunction ordering Defendants to return and destroy all documents and records relating or referring to Plaintiffs' arrests and any other reference to Plaintiffs in police files based on their arrests; actual and compensatory damages against Defendants; and because the Defendants acted maliciously, wantonly, or oppressively, punitive damages, plus the costs of this action, attorneys' fees and such other and additional relief as this court deems equitable.

## COUNT II

**[42 U.S.C. § 1983 Claim for Violations of the First Amendment Right] (Brought by all Class Plaintiffs, Individually and on Behalf of the Class and all Subclasses, and all of the Individually Named Plaintiffs)**

54. Plaintiffs reallege paragraphs 1 through 53.

55. The actions of the Defendants AMY WEIRICH, RICHARD DESAUSSURE, other individual Defendants identified herein and Does in falsely detaining, arresting and imprisoning Plaintiffs who were exercising their Constitutional right to freedom of association further violated their First Amendment rights to be free from the infringement of their right to of speech and expression to the citizens of the United States with the First Amendment, which reads, in part, "Congress shall make no law ... abridging the freedom of speech." under the United States Constitution, and thus violated 42 U.S.C. § 1983.

267. The actions of the Defendants were the direct and proximate cause of the violations

of Plaintiffs' First Amendment rights, bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of speech and expression, loss of income, and legal expenses, as set forth more fully above. WHEREFORE, pursuant to 42 U.S.C. § 1983, Plaintiffs demand a preliminary and permanent injunction ordering Defendants to return and destroy all documents and records relating or referring to Plaintiffs' arrests and any other reference to Plaintiffs in police files based on their false arrests; actual and compensatory damages against Defendants; and because the Defendants acted maliciously, wantonly, or oppressively, punitive damages, plus the costs of this action, attorneys' fees and such other and additional relief as this court deems equitable.

## COUNT III
### [42 U.S.C. § 1983 Claim for Excessive Force Claim]
### {Deprivation Of Rights Under Color Of Law}
### TITLE 18, U.S.C., § 242

56. Plaintiffs reallege paragraphs 1 through 55.

57. The acts of Defendants Weirich, OLDHAM and MOORE did act, under color the color of the law, statute, ordinance, regulation, or custom, willfully subjects Plaintiffs in any Shelby County, Memphis, TN for the deprivation of their rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.  Under the law any person who commits this crime shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

58. The acts of Defendants, OLDHAM by forcing Plaintiff Moses with guns to go with them; deliberately intentionally handcuffing Moses wrists too tightly or unreasonably

forcing her to leave absent an arrest warrant; otherwise using excessive unnecessary and unjustifiable force against Plaintiffs; as well as failing to intervene to prevent said abuse despite having the opportunity and duty to do so; violated these Plaintiffs' rights under the Fourth Amendment to the United States Constitution to be secure in their persons, papers and effects against unreasonable searches and seizures, and thus violated 42 U.S.C. § 1983.

59. The actions of Defendants were the direct and proximate cause of the violations of these Plaintiffs' Fourth Amendment rights, bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of liberty, loss of income, and legal expenses, as set forth more fully above. WHEREFORE, pursuant to 42 U.S.C. § 1983, Plaintiffs demand actual and compensatory damages against Defendants; and because Defendants acted maliciously, wantonly, or oppressively, punitive damages, plus the costs of this action, attorneys' fees and such other and additional relief as this court deems equitable and just.

## COUNT IV

**[42 U.S.C. §1983 Claim for Defendants Deliberate Indifference to Plaintiffs Moses Medical Needs]**

60. Plaintiffs reallege paragraphs 1 through 59

61. The actions of the Defendants MOORE in deliberately ignoring Plaintiff's Moses serious medical needs when she fell and was dizzy by refusing to take Plaintiff Moses to hospital, clinic or doctor in a timely manner, knowing they had not received any medical care since they were injured, and in exacerbating the pain and injury by further imposing other arbitrary, unreasonable and punitive conditions holding her in solitary confinement, violated these Plaintiffs' rights under the Fourth and Fourteenth Amendments to the United States Constitution.

WHEREFORE, pursuant to 42 U.S.C. § 1983, Plaintiffs demand actual and compensatory damages against Defendants; and because these Defendants acted maliciously, wantonly, or oppressively, punitive damages, plus the costs of this action, attorneys' fees and such other and additional relief as this court deems equitable and just.

## COUNT V

**[42 U.S.C. §1983 Monell Policy, Practice and Custom Claim]**
**(Brought by all Class Plaintiffs, Individually and on Behalf of the Class and all**
**Subclasses, and the Individually Named Plaintiffs)**

62. Plaintiffs reallege paragraphs 1 through 61.

63. The actions of the individual Defendants were done pursuant to one or more interrelated de facto as well as explicit policies, practices and/or customs of the Shelby County Sheriff Officer, City of Memphis and, its police department, its Police Board, its Personnel Division, and/or its employees.

64. Upon information and belief, high-ranking police officials, including Defendants Weirich, Oldham, Desaussure, planned, authorized, directed, ratified and/or acquiesced in the unconstitutional and unlawful police actions complained of herein.

65. At all times material to this complaint the Defendants and its police department, employees Personnel Division and/or Police Department had interrelated de facto policies, practices, and customs which included, inter alia, a) the failure to properly train, supervise, discipline, transfer, monitor, counsel and otherwise control police officers engaged in committing violations of police department rules and regulations, including the excessive use of force, false detentions, false arrests, false imprisonments, the harassment of civilians exercising their First Amendment Rights in Social Media, complete disregard and willful violation of MPD's arrest policies, and the manufacturing of false reports and statements as well as the physical and verbal abuse of civilians, and other police abuse, particularly in cases where the officers have repeatedly been accused of said acts; b) the police code of silence, particularly in cases where officers engaged in the above articulated violations; and c) encouragement of false detentions, false arrests, false imprisonments, and the use of excessive force for any citizen who speaks out against the public corruption of the Shelby County Government.

66. Further, the constitutional violations and damages to Plaintiffs that occurred as described herein were directly and proximately caused by the unofficial, unconstitutional, tacit policy of authorized policymakers of the City and County, who have, for years, deliberately ignored The Class' rights to Due Process, and indulged in violence and

intimidation against Plaintiffs by officers assigned to "monitor" their Facebook page and any other social media networking in respects to political speech. This is done with the Shelby County Office of Homeland Security to invade the privacy of a person who participate in protest demonstrations; and who deliberately failed to supervise and control such officers so as to prevent violations of The Class'' rights, and deliberately undermined, negated and stifled the citizen's' complaint and grievance process. Thus, rank and file officers understand there is little or no risk involved in brutal attacks on or illegal arrests of persons exercising Free Speech rights because they have been instructed by Weirich to make such false arrest.

67. In addition, the City and County, the police department, and the command-level Defendants are well aware, and have been told and notified many times, that such illegal arrests have happened again and again, to the point where a pattern and practice of brutality and harassment of vocal activist that they have been labeled falsely as *"sovereign citizens"* to create a false and heighten sense of security to illegally detain, stalk, and harass, the Class. This readily evident, going back since the *Crump* Machine and assassination of Dr. Martin Luther King.

68. These policies are evidenced, inter alia, by the following: a) the systematic encouragement, from Weirich on down, of false detentions, false arrests, false imprisonments, by promoting officers who make large numbers of arrests, giving them high performance ratings, paid leave, based in large part on the number of arrests which they make, and ignoring the large number of citizen complaints made against many of these officers when making these promotions, assignments, and ratings; b) the failure to properly discipline, monitor, assign, counsel, transfer, supervise and otherwise control officers, including the Defendants, particularly after department records and studies, statistical data, and computer programs have, or should have, identified these officers including Defendants as "repeaters" with multiple complaints of brutality and other abuse or otherwise as actual or potential problem officers.

69. The policy, practice, and custom of a police code of silence results in police officers refusing to report instances of official misconduct, collusion, conspiracy, racketeering, police misconduct, including excessive force, false detentions, false arrests and false imprisonments and other abuse of citizens of which they are aware, despite their

obligation under the Color of State Law to do so, and also includes police officers either remaining silent or giving false and misleading information during official investigations in order to protect themselves or fellow officers from internal discipline, civil liability, or criminal charges, and to perjure themselves in criminal cases where they and their fellow officers, and public officials have engaged in fraud or have falsely arrested, imprisoned and prosecuted the criminal Defendant.

70. The fact that the aforementioned "Code of Silence" exists, and that its adverse impact is allowed to occur through the actions and inactions of high-ranking police officials including police employees and former and current MPD Directors, is also evidenced by the fact that while former Mayor AC Wharton, have all acknowledged publicly that they are aware of the existence of the custom and practice of a police code of silence, they as well as no other MPD Director have acted to eliminate the code or to counteract its impact on police discipline, the use of excessive force, Weirich's fabrication of evidence and false arrests and prosecutions.

71. In particular, no one in this city is capable of disciplining public officials who make false reports and statements or remain silent to hide the elected officials wrongdoing although the Grand Jury Process exist Weirich manipulates that process and denies common citizens access to the Foreman and selective prosecutes cases and presentations to the Grand Jury. The Grand Jury is on the same floor of 201 Poplar and Weirich threatens persons who attempt to present evidence of a crime without her knowledge.

72. The deliberate circumvention of the Grand Jury Process in Shelby county and the de facto policies, practices, and customs of failing to train, supervise, monitor, discipline, counsel and control, the code of silence, and the encouragement of bogus indictments, false arrests and prosecutions are interrelated and exacerbate the effects of each other, and promote legalize governmental abuse of power anyone who is affiliated with Weirich remains immune from ever being charged or discipline.

73. Said interrelated policies, practices, and customs, as set forth above, both individually and together, were maintained and implemented with deliberate indifference, and encouraged the Defendants to commit the aforesaid acts against the Plaintiffs, and therefore, acted as direct and proximate causes of said constitutional violations, and injuries to the Plaintiffs.

74. Additionally, said failure to properly train, discipline, monitor, control, assign, transfer, supervise, and counsel Defendants, was also done with deliberate indifference and likewise acted as a direct and proximate cause of the injuries to Plaintiffs.

75. These policies, practices and customs encouraged, inter alia, excessive use of force, the making of bogus indictments, false statements, and reports, and physical and verbal abuse of civilians, and were separately and together, a direct and proximate cause of the unconstitutional acts committed by Defendants in this case and the injuries sustained by the Plaintiffs.

76. As a direct and proximate result of the conduct and unspoken policy of Defendants described herein, their failure to take reasonable steps to remedy the pattern and practice of Official Misconduct, Corruption, Abuse of Power, and Police Brutality, and their deliberate indifference to the serious threat to the rights of minorities.

77. Plaintiffs were each denied her or his constitutional, statutory, and common law rights as stated below, and have suffered, and continue to suffer, mental and emotional distress, humiliation, embarrassment, discomfort, fear, shock, anxiety, pain and harm.

78. Defendants' policies, practices, conduct, acts and omissions alleged herein have no plain, adequate and speedy remedy at law to redress the wrongs described herein. Plaintiffs fear they will again be subjected to continual false arrests without any warning, the Abuse of Power, and false imprisonment or harassment.  Plaintiffs continue to suffer harm as a result of the continuing existence of the false reports of their arrests herein. Plaintiffs, therefore, seek injunctive relief ordering Defendants to substantiate the legitimacy and authenticity of all Grand Jury Indictments and to seal and destroy the bogus indictments of Plaintiffs' arrests.

WHEREFORE, Plaintiffs, demand a preliminary and permanent injunction ordering Defendants to return and destroy all documents and records relating or referring to Plaintiff's' false arrests and any other reference to Plaintiffs in police files based on their arrests; judgment against Defendant City for compensatory damages, plus costs and attorney's' fees and whatever additional relief this court finds equitable and just.

## COUNT VI

**[Supplemental State Law Claims for Violations of the Tennessee Constitution]**
**(Brought by all Class Plaintiffs, Individually and on Behalf of the Class and All Subclasses, and the Individually Named Plaintiffs)**

79. Plaintiffs reallege paragraphs 1 through 78.

80. The actions taken by Defendants denied Plaintiffs their state constitutional rights to be secure in their persons; to be free from unreasonable searches and seizures; to speak, write and publish freely; to due process of law and equal protection of the laws, as provided by the Tennessee Constitution, Article I, sections 1, 2, 4, 5, and 6, and were a direct and proximate cause of Plaintiff's' injuries as set forth above.

WHEREFORE, Plaintiffs demand a preliminary and permanent injunction ordering Defendants to return and destroy all documents and records relating or referring to Plaintiffs' arrests and any other reference to Plaintiffs in SCSO files, MPD files, and TBI files, based on their arrests on or after December 18, 2014; actual and compensatory damages against Defendants; and because they acted maliciously, wantonly, or oppressively, punitive damages, plus the costs of this action, attorneys' fees and such other and additional relief as this court deems equitable and just.

## COUNT VII

**{Supplemental State Law Claims for Negligence, False Detention, Arrest, and Imprisonment}**
**(Brought by all Class Plaintiffs, Individually and on Behalf of the Class and All Subclasses, and all of the Individually Named Plaintiffs)**

81. Plaintiffs reallege paragraphs 1 through 80.

82. The false detention, arrest and imprisonment of Plaintiffs on or after December 18, 2014, and actions of the Defendants Oldham, Moore, Desaussure, directly and proximately

caused Plaintiffs' injuries, emotional distress, pain and suffering as claimed above and constitute the tort of false arrest and imprisonment under Tennessee law.

83. WHEREFORE, Plaintiffs demand a preliminary and permanent injunction ordering Defendants not destroy any evidence, documents and records relating or referring to Plaintiff's' false arrests and any other reference to Plaintiffs in police files based on their arrests on or after December 18, 2014; actual and compensatory damages, and because Defendants acted maliciously, wantonly, or oppressively, punitive damages, plus the costs of this action and such other and additional relief as this court deems equitable and just.

## COUNT VIII
### [Pendent State Law Claims for Malicious Prosecution]
### (Brought by Plaintiff Moses)

84. Plaintiffs reallege paragraphs I through 83.

85. The acts of Defendants in knowingly and maliciously creating a false story, falsely charging Plaintiffs with one count of Stalking, one count of Retaliation against a Juror, one count of Forgery, two counts Harassment, 2 counts Impersonating a Licensed Professional, Tampering With Evidence, and, Perjury, Aggravated Perjury, thereby causing them to lose their liberty for hours and be criminally prosecuted and incur legal expenses, out of pocket losses and emotional distress constituted the tort of malicious prosecution under the laws of the State of Tennessee. WHEREFORE, Plaintiffs demand actual or compensatory damages, and because Defendants acted willfully and wantonly, punitive damages, plus the costs of this action and such other and additional relief as this court deems equitable and just.

## COUNT IX

### [Supplemental State Law Claim for Conspiracy]

**(Brought by all Class Plaintiffs, Individually and on Behalf of the Class and All Subclasses and all of the Individually Named Plaintiffs)**

86. Plaintiffs reallege paragraphs 1 through 85.

87. Defendants AMY WEIRICH, RICHARD DESAUSSURE, BILL OLDHAM, ROBERT MOORE, CITY OF MEMPHIS {MPD} Mayor AC WHARTON other individual Defendants identified and not identified herein and Does agree and together reached an understanding or agreement to engage in a course of conduct, and otherwise jointly acted and/or conspired among and between themselves, to issue false documents, initiate and robo-sign bogus indictments by falsifying the signature of J.Pat Vincent and Mary Thomas, to deliberately falsely arrested, falsely imprison, detain, assault and imprison Plaintiffs.

88. Defendants conspired and arrived at an understanding and meeting of the minds that the law enforcement would harass, intimidate, punish and retaliate against the participants in political campaigns that opposed Weirich and other Republican-endorsed candidates, because of their political beliefs, and in doing so deployed mass incarceration of intelligent, and underprivileged minorities.

89. The objectives of this conspiracy, among others, were to prevent the political expression and communication of, and otherwise interfere with, the message of the constitutionally protected activities and protest of the Plaintiff class, to summarily punish the participants, to chill and deter voter turnout and ensure that minorities receive felony convictions where they subsequently lose their constitutional right to vote.

90. The decision and related activities involved in the *false felony* arrests of the members of the Plaintiff class without probable cause and the maltreatment of Plaintiff class members on the street and in the jails, were part of, and were overt acts taken in furtherance of, the conspiracy to reduce voter turnout in Shelby County which is a predominately Democratically declared county.

91. In furtherance of this conspiracy or conspiracies, the Defendants named above, together with their unsued co-conspirators, committed the overt acts set forth above, including, but not limited to, the wrongful and false arrests, false imprisonments, and malicious prosecutions of Plaintiffs, the manufacture and construction of knowingly false inculpatory evidence against Plaintiffs, the making of knowing misstatements , bogus indictments, and the filing of false and incomplete statements and reports. Said conspiracy or conspiracies and overt acts were and are continuing in nature.

92. Defendant Weirich and Desaussure, other individual Defendants' and their co-conspirators' overt acts as set forth which were committed jointly and/or while conspiring together to falsify documents, falsely detain, arrest, falsely imprison, and commit assault and battery on the Plaintiffs, constitute the tort of conspiracy.

93. This conspiracy proximately caused the injuries to the Plaintiffs set forth above. WHEREFORE, Plaintiffs demand a preliminary and permanent injunction ordering Defendants to not return and destroy any documents and records relating or referring to Plaintiffs' false arrests and any other reference to Plaintiffs in police files based on their arrests; actual and compensatory damages against Defendants, and, because these Defendants acted maliciously, willfully, wantonly and/or with reckless disregard for Plaintiffs' rights, for punitive damages, plus the costs of this action, attorneys' fees and such other relief as this court deems equitable and just.

## COUNT X

### [Brought by Plaintiff Moses Retaliation and Discrimination]
### (Brought by all Class Plaintiffs, Individually and on Behalf of the Class and All Subclasses and all of the Individually Named Plaintiffs)

94. Plaintiffs reallege paragraphs 1 through 93.

95. Plaintiff Moses did apply for employment with the Shelby County Government and Plaintiff filed ethic complaints against county employees for specific violations in return she was targeted by the Defendants.

96. As a direct and proximate cause of the foregoing deprivation of constitutional freedoms and rights and statutory rights committed by the Defendants, and violation of State of Tennessee and common laws Plaintiff Moses states Defendants violated the Whistleblower Protection Act/Civil Service Reform Act, 5 U.S.C. §§ 2302(b)(8), (b)(9); 42 U.S.C. § 1983 (allowing claims by public employees of retaliation based on protected First Amendment activity); the Sarbanes- Oxley Act of 2002, 18 U.S.C. § 1514A (protecting employees of publicly traded companies from retaliation for whistleblowing).

97. As a direct and proximate cause of the foregoing Defendants did violate 42 U.S.C. § 12203(c) by discriminating against Plaintiff Defendants did act or practice made unlawful acts by this chapter or because such Plaintiff made a complaint, charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

98. As a direct and proximate cause of the foregoing were a direct interference, coercion, and intimidation and Defendants did coerce, intimidate, threaten, or interfere with Plaintiffs exercise or enjoyment or encouraged any rights granted or protected by this chapter.

## DAMAGES

99. Plaintiffs reallege paragraphs 1 through 98.

100. As a direct and proximate cause of the foregoing deprivations of constitutional freedoms and rights and statutory rights committed by the Defendants, and violation of the state of Tennessee and common law, and statutory law, Plaintiffs have suffered monetary damages including but not limited to the following:

a.) past, present, and future compensatory damages;

b.) past, present, and future lost earnings;

c.) past, present, and future pain and suffering;

d.)past, present, and future emotional distress;

e.)past, present, and future public humiliation;

f.)past, present, and future diminished reputation;

g.)past, present, and future impaired earning capacity

101.     As a direct and proximate cause of the aforesaid actions of the Defendants actions Plaintiffs are asking for all general and specific damages by the alleged conduct of Defendants.

102.     As a basis for punitive damages against the individually named Defendants sued in their individual capacities, Plaintiffs would show that the deprivations of constitutional freedoms, statutory rights, and common law, were knowingly, intentionally and maliciously done and said acts were further an abuse of power under the color of State Law and trust for public officers.

103.     By reason of the above-described injuries, Defendants are liable to Plaintiffs for compensatory damages, exemplary, and punitive damages, and any reasonable attorney fees incurred in the cost of this suit.

WHEREFORE, Plaintiffs, pursuant to the laws of this land demand judgment against all **Defendants:**

A. That Process issue and be served upon all Defendants by the United States Marshals, requiring them to appeal and answer this Complaint, in accordance with Federal Rules of Civil Procedure;

B. That the Court accept jurisdiction of the pendent state law claims alleged in the Complaint;

C. That the Defendant's practices as complained of herein, be declared to be in violation of the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and Tennessee State Constitution and Tennessee State Constitution;

D. Compensatory damages adequate to compensate the Class for all injuries in the amount 70,000,000.00 awarded to Plaintiffs against the individual Defendants as damages, attorneys' fees, costs and interest, and/or for any settlement entered into between the Plaintiffs and Defendants, and for whatever additional relief this court deems equitable and just.

E. Immediate Disqualification of Assignment to Magistrate Diane Vescovo and District Judge Cheryl Lipman from any involvement because they are witnesses in this case.

F. Declaratory Relief and a Temporary Injunction requiring federal injunctions of all person being held on Bail over $100,000.00, for offenses not against persons.

G.  Such other and further relief as this Court may deem appropriate under the circumstances and

H.  For a trial by jury.

Respectfully submitted,

X

Pamela Moses
P.O. Box 80564
Memphis, TN 38108
prose