IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

PAMELA J. MOSES,

       Plaintiff,

vs.                                         No. 15-2806-JDT-dkv

AMY WEIRICH, RICHARD DESAUSSURE,
BILL OLDHAM, ROBERT MOORE,
CITY OF MEMPHIS POLICE DEPARTMENT,
MAYOR A.C. WHARTON, DOES 1-103,

       Defendants.

_____

REPORT AND RECOMMENDATION FOR *SUA SPONTE* DISMISSAL

_____

On December 17, 2015, the plaintiff, Pamela J. Moses ("Moses"), a resident of Memphis, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 against Shelby County District Attorney General Amy Weirich ("Weirich"), Shelby County Criminal Court Clerk Richard Desaussure, Shelby County Sheriff Bill Oldham, Shelby County Jail Director Robert Moore ("Moore"), former Memphis Mayor A.C. Wharton, City of Memphis Police Department ("MPD"), and Does 1-103 (collectively "the Defendants"), (ECF No. 1), accompanied by a motion seeking leave to proceed *in forma pauperis*, (ECF No. 2).[1]   On December 18, 2015, the court issued an order granting Moses leave to proceed *in forma pauperis*. (ECF No. 4.) On December 21, 2015, Moses

_____

[1]All the named individual defendants are sued in their individual capacities. (Am. Compl. 3-4, ECF No. 5.)

filed an amended complaint which supersedes Moses's original complaint.  (ECF No. 5.)   In the amended complaint, Moses includes a motion for class certification.   On December 28, 2015, Moses filed a motion for an emergency temporary restraining order and preliminary injunction.  (ECF No. 6.)

This case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate. (Admin. Order 2013-05, Apr. 29, 2013.)   For the reasons that follow, it is recommended that the court abstain from exercising jurisdiction over Moses's injunctive relief claims and dismiss all of Moses's damages claims for failure to state a claim upon which relief may be granted.   Also, Moses's motion for class certification is denied.

## I.  PROPOSED FINDINGS OF FACT

Moses's amended complaint consists of twenty-eight typewritten pages and 103 numbered paragraphs.  (Am. Compl., ECF No. 5.)  Moses states that the lawsuit is a class action for money damages and injunctive relief against the named defendants "who knowingly, intentionally falsely arrested, imprisoned and violated the Civil Rights of approximately 25 or more citizens in Shelby County after December 18, 2014."  (*Id*. at 1.)

In the "Factual Allegations" section of her complaint, Moses states that on December 17, 2014, unidentified MPD

officers arrived at 804 Holly Street where they asked Lois Miller ("Miller"), a resident of the property, questions about the residents of the house and told her they were trying to serve papers. (*Id.* at 8.) The officers soon left the residence. (*Id.*) Moses then alleges that the next day, December 18, 2015, three officers, armed and dressed in camouflage, "stormed" into the same residence where Moses was sitting on the couch with her six-year-old son and told her they had a warrant for her arrest. (*Id.* at 9.) Moses alleges that the officers did not identify themselves, were not driving a police vehicle, and could not produce a search or arrest warrant. (*Id.* at 10.) Moses states that when the officer who seemed to be in charge realized that she "was not going to go willingly," he made a phone call, and a Shelby County Sheriff Officer ("SCSO") entered her house. (*Id.* at 10.) According to Moses, the SCSO told her that they did not have the warrant because this was a "fugitive call so it was done secretly." (*Id.*) The SCSO told the other officers that they could leave and he would take Moses to jail. (*Id.*)

Moses alleges that she was then transported in handcuffs and taken to Shelby County jail where she was "strip searched and humiliated by the jail employees." (*Id.* at 11.) Moses states that she was never formally told what she was charged with and that "[e]ach jail employee informed [her] they couldn't

do anything because this was a secret indictment, that came from Criminal Court, and that she had to see a Criminal Court judge." (*Id.*)  Moses further alleges that she was told "she would have to wait until after the New Year[] [to be brought before a judge] because Criminal Court was closed."  (*Id.*)  According to Moses, she never saw a judge and was held in solitary confinement without bond.  (*Id.*)

In the "Class Allegations" section of her complaint, Moses states that she brings this action as a class action pursuant to Rule 23 and "seek[s] to certify a class and two subclasses stemming from the class."  (*Id.* ¶ 20.)  Moses states that "[t]he class (class A) consists of all persons who were [] detained and arrested by the Defendants on or after December 18, 2014."  (*Id.* at 21.)  Subclass A-1 consists of 250 or more people and "is defined as all class members who were seized and detained by the Defendants in Jail area for 3 and a half to three hours or more before they were allowed to make a phone call and or have Bail set."  (*Id.*)  Subclass A-2 consists of approximately 250 people and is defined as "all class members inclusive of A-1 who were seized, detained, arrested, and taken into police custody by the Defendants and remain in Jail."  (*Id.* ¶ 22.)

According to Moses, the class members were denied due process at every stage of the process such as detention and arrest, setting of bail, manner of confinement, and filing of

false charges and malicious prosecution. (*Id.* ¶¶ 29-50.)
Specifically, Moses alleges that "[e]ach single class member was
detained, arrested, not given Due Process, not brought before a
Magistrate or Judge, arrested [] without probable cause . . .
arrest[ed] without the mention of the suspect's Miranda Rights,
arrest[ed] without just cause or valid arrest warrant,
arrest[ed] with an arrest warrant that was obtained with false
information given to the court by a police officer, arrest[ed]
by incompetence, arrest[ed] for personal gain, arrest[ed] based
on race, arrest[ed] based on pure malice. (*Id.* ¶ 21.)

       As to bail, Moses alleges that the class members were held
without bail or set excessive bail based on their race and
socioeconomic status in violation of Tennessee Code § 40-11-105.
(*Id.* ¶¶ 29, 45-48.) Moses alleges that Weirich instructed law
enforcement officers to charge the arrestee with a felony
regardless of the offense and instructed assistant attorneys to
treat African American defendants differently by not entering
into plea agreements; such practice is allegedly known as the
"No Deals" policy. (*Id.* ¶ 30.)[2]

       As to unlawful detention and arrest, Moses alleges that the
Defendants entered the homes of the class members without
warrants, and, in some cases, forcefully used shields and

---

[2]Moses states that she has attached an exhibit of this
alleged practice; however, her amended complaint contains no
attachments.

weapons to drag people out of their private residences and vehicles. (*Id.* ¶¶ 34-35.) Further, according to Moses, the class members "were never Mirandized at their arrest, told what they were under arrest for or provided with a copy of the arrest warrant." (*Id.* ¶ 36.)

As to the manner of confinement, Moses alleges that the class members "were subjected to verbal abuse, neglect and unreasonable conditions of confinement at the police stations, . . . [were] deprived of food, telephone communication, medical treatment, necessary toiletries and feminine hygiene products . . . [and] were confined in overcrowded and ice cold cells for extended and unreasonable periods of time." (*Id.* ¶¶ 41-42.) Moses further alleges that Weirich has engaged in illegal wiretapping of phone calls between class members and their attorneys. (*Id.* ¶ 48.) Lastly, Moses alleges that the Defendants conspired to falsely prosecute class members with false criminal charges and keep them falsely imprisoned. (*Id.* ¶ 50.)

Based on these allegations, Moses asserts the following claims individually and some of them also on behalf of the class: (1) Count I — § 1983 claim for false detention, arrests, and imprisonments, brought individually and on behalf of the class; (2) Count II — § 1983 claim for violations of the First Amendment rights, brought individually and on behalf of the

class; (3) Count III — § 1983 claim for excessive force and a 18 U.S.C. § 242 claim for deprivation of rights under color of law, brought individually; (4) Count IV — § 1983 claim for deliberate indifference to medical needs, brought individually; (5) Count V — § 1983 *Monell* policy, practice, and custom claim, brought individually and on behalf of the class; (6) Count VI — a state law claim for violations of the Tennessee Constitution, brought individually and on behalf of the class; (7) Count VII — a state law claim for negligence, false detention, arrest, and imprisonment, brought individually and on behalf of the class; (8) Count VIII — a state law claim for malicious prosecution, brought individually; (9) Count IX — a state law claim for conspiracy, brought individually and on behalf of the class; and (10) Count X — a state law claim for retaliation and discrimination, brought individually and on behalf of the class. (*Id.* ¶¶ 51-98.)

For relief, Moses requests compensatory damages for the class members in the amount of $70 million, punitive damages, declaratory relief, "a preliminary and permanent injunction ordering Defendants to return and destroy all documents and records relating or referring to Plaintiffs' arrest and any other reference to Plaintiffs in police files based on their arrests," "a preliminary and permanent injunction ordering Defendants [to] not destroy any evidence, documents and records

relating or referring to Plaintiffs' false arrests and any other reference to plaintiffs in police files based on their arrests on or after December 18, 2014,"[3] and a temporary injunction "requiring federal injunctions of all person [sic] being held on Bail over $100,000.00, for offenses not against persons." (*Id.* ¶¶ 15, 55, 78, 80, 83, 93, 99-103 & pp. 27-28.)[4]

Notably, this is Moses's twelfth lawsuit in this court since 2012; Moses's eleven prior lawsuits have each been dismissed. In each of the seven federal actions listed below, Moses attempted to challenge various state criminal prosecutions:

1. *Pro Se* Complaint, Moses v. Tennessee, Case No. 2:14-cv-02225-JTF-dkv (W.D. Tenn. Mar. 31, 2014) (dismissed under the Younger abstention doctrine);

2. *Pro Se* Complaint, Moses v. Gardner, Case No. 2:14-cv-2706-SHL-dkv (W.D. Tenn. Sept. 12, 2014) (dismissed for lack of subject matter jurisdiction and failure to prosecute);

---

[3]The court notes that Moses's first two requests for injunction directly contradict each other.

[4]Moses also demands to "disqualify" me, the undersigned Chief Magistrate Judge, because I am a witness in this case. (*Id.* at 27.) Contrary to Moses's allegation, I have had no involvement in Moses's state criminal proceedings. I have no knowledge of those proceedings, other than the public records and what Moses herself has made part of the record in her various lawsuits. Thus, construing Moses's demand to "disqualify" me as a motion for recusal, such motion is denied.

3. Notice of Removal, Gardner v. Moses, Case No. 2:14-cv-02714-SHL-dkv (W.D. Tenn. Sept. 15, 2014) (dismissed for lack of subject matter jurisdiction);

4. Notice of Removal, Moses v. Oldham, Case No. 2:14-cv-02715-SHM-dkv (W.D. Tenn. Sept. 15, 2014) (dismissed for improper removal).

5. *Pro Se* Complaint, Moses v. Gardner, Case No. 2:14-cv-02763-JDT-dkv (W.D. Tenn. Sept. 29, 2014) (dismissed for failure to state a claim upon which relief may be granted);

6. *Pro Se* Complaint, Moses v. TN Bureau of Investigation, Case No. 2:14-cv-02946-SHL-dkv (W.D. Tenn. Dec. 8, 2014) (dismissed for lack of subject matter jurisdiction and, alternatively, under the *Younger* abstention doctrine and for failing to state a claim for relief);

7. *Pro Se* Complaint, Moses v. Slatery, Case No. 2:14-cv-03024-SHL-dkv (W.D. Tenn. Dec. 30, 2014) (dismissing Moses's habeas petition for failure to exhaust her state court remedies).

## II. PROPOSED CONCLUSIONS OF LAW

A.   28 U.S.C. § 1915(e)(2) Screening

Pursuant to Local Rule 4.1(a), service will not issue in a *pro se* case where the *pro se* plaintiff has been granted leave to proceed *in forma pauper*is until the complaint has been screened

under 28 U.S.C. § 1915(e)(2).  The clerk is authorized to issue summonses to *pro se* litigants only after that review is complete and an order of the court issues.   This report and recommendation will constitute the court's screening of Moses's amended complaint.

The court is required to screen *in forma pauperis* complaints and to dismiss any complaint, or any portion thereof, if the action:

(i)  is frivolous or malicious;

(ii) fails to state a claim on which relief may be granted; or

(iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2).

B.   Standard of Review for Failure to State a Claim

In assessing whether Moses's amended complaint states a claim on which relief may be granted, the standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied.   *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010).  "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'"   *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir.

2011)(quoting *Iqbal*, 556 U.S. at 681)(alteration in original). "[P]leadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (internal quotation marks omitted). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011)("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading")(internal quotation marks omitted); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003)(affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Paynes's claim for

her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004)("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011)("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

The court will first analyze whether Moses's claims brought on her behalf state a claim for relief under the *Twombly* and *Iqbal* standard. Thereafter, the court will consider Moses's request for class certification.

C. <u>Abstention</u>

The court should abstain from exercising jurisdiction over Moses's claims for injunctive relief. There is "a strong judicial policy against federal interference with state criminal proceedings." *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 600 (1975). Thus, when a federal court suit deals with issues involved in a state proceeding, the federal court must abstain until the conclusion of the state proceeding, absent extraordinary circumstances. *James v. Hampton*, 513 F. App'x

471, 473-74 (6th Cir. 2013)(citations omitted). The Supreme Court first considered the propriety of federal-court intervention in pending state criminal prosecutions in *Younger v. Harris*, 401 U.S. 37 (1971). "*Younger* abstention is not a question of jurisdiction, but is rather based on 'strong policies counseling against the exercise of such jurisdiction.'" *O'Neill v. Coughlan*, 511 F.3d 638, 641 (6th Cir. 2008)(citing *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.,* 477 U.S. 619, 626 (1986)). Further, the *Younger* abstention doctrine may be raised *sua sponte* by the court or by the parties. *See O'Neill,* 511 F.3d at 642; *Pethtel v. Tenn. Dep't of Children Servs.,* No. 3:10-CV-469, 2011 WL 5592853, at *3 (E.D. Tenn. Nov. 16, 2011).

"The *Younger* abstention doctrine provides that a federal court should abstain from interfering in a state court action when (1) there is an ongoing state judicial proceeding, (2) the state proceeding implicates important state interests, and (3) there is an adequate opportunity in the state proceedings to raise constitutional challenges." *Graves v. Mahoning Cnty.*, 534 F. App'x 399, 406 (6th Cir. 2013)(citing *Fieger v. Cox,* 524 F.3d 770, 775 (6th Cir. 2008) & *Am. Family Prepaid Legal Corp. v. Columbus Bar Ass'n,* 498 F.3d 328, 332 (6th Cir. 2007)).

Here, the first condition is met because Moses seeks federal court intervention in an on-going state criminal

proceeding.   According to the Shelby County Criminal Court
website, Moses was indicted on December 18, 2014 for tampering
with/fabricating evidence, forgery $1000 or less, retaliation
against juror, perjury, and stalking.[5]   According to the same
website, a capias warrant was issued on December 18, 2014,
Warrant No. 14048690, and Moses was taken to jail on the same
date, Booking No. 14647986.[6]   Moses entered a guilty plea on the
above-listed charges and was sentenced on April 29, 2015.[7]   On
July 15, 2015, Moses appealed her state court case.   On December
21, 2015, a criminal court judge issued a capias warrant for
Moses, Capias No. 15046208.[8]   State court records indicate that

---

[5]Moses's December 18, 2014 Indictment No. is 1406502.   Moses
also has a February 12, 2015 indictment for evading arrest,
Indictment No. 1500740, and a February 19, 2015 indictment for
evading arrest and escape from incarceration, Indictment No.
1500884.

[6]Moses was arraigned on January 7, 2015 and had a bond
hearing on January 22, 2015.

[7]Moses received three years of probation on her tampering
with evidence charge, two years of probation on her forgery
charge, eleven months and twenty-nine days of probation on her
perjury charge, and eleven months and twenty-nine days of
probation on her stalking charge.

[8]According to Shelby County Sheriff's Office website, there
are three active warrants on Moses: Warrant Nos. 15046208,
15046211, and 15046210.   In her motion for emergency temporary
restraining order and preliminary injunction filed on December
28, 2015, Moses states that multiple arrest warrants were issued
after December 17, 2015 because Moses violated probation.   (Mot.
for Emergency TRO & Prelim. Inj. 2, ECF No. 6.)   In that
motion, Moses denies violating probation and claims that the
warrants "were obtained by fraud and malice."   (*Id.*)

Moses's "case status" or "case disposition code" is "A" which means "case under appeal." Because Moses's case is under appeal, her state judicial proceeding is ongoing, and, therefore, the first condition of the *Younger* abstention doctrine is met. *See Nimer v. Litchfield Twp. Bd. of Trs.*, 707 F.3d 699, 701 (6th Cir. 2013) (holding that the first condition of *Younger* abstention was satisfied because the plaintiffs' appeal was still pending when they brought the federal lawsuit).

The second condition is also satisfied because the State "has an important interest in enforcing its criminal laws." *Cook v. Lamberth*, No. 3 09 0434, 2009 WL 1383341, at *1 (M.D. Tenn. May 15, 2009); *see also Cooper v. Parrish*, 203 F.3d 937, 954 (6th Cir. 2000)(stating that state criminal proceedings would likely involve important state interests).

As to the third condition, a "plaintiff must have an adequate opportunity in the state proceedings to raise constitutional challenges in order to satisfy the third prong of the *Younger* abstention test." *Am. Family Prepaid Legal Corp. v. Columbus Bar Ass'n*, 498 F.3d 328, 334 (6th Cir. 2007)(citation and internal quotation marks omitted). "Abstention is appropriate unless state law *clearly bars* the interposition of the constitutional claims." *Id.* (citation and internal quotation marks omitted). The third condition is also met in

this case.   Moses has not argued that she was denied the opportunity to raise her due process challenges in the state proceedings or the pending appeal. *Nimer*, 707 F.3d at 701 ("[T]he Nimers have not carried their burden in showing that state procedural law barred them from presenting their constitutional claims [in state court]."). Moses "has the ability under state law to appeal any adverse action arising from [her] prosecution." *Cook*, 2009 WL 1383341, at *1. Therefore, the facts of this case satisfy the third condition for *Younger* abstention.

If the three *Younger* criteria are satisfied, the court should abstain from interfering "unless there is a showing of bad faith, harassment, or another extraordinary circumstance that makes abstention inappropriate." *Graves*, 534 F. App'x at 406 (citing *Am. Family Prepaid Legal Corp.*, 498 F.3d at 332). Moses alleges no unusual or extraordinary circumstances sufficient to warrant federal intervention at this time.[9]

---

[9] On December 8, 2014, Moses filed a complaint against the Tennessee Bureau of Investigation, Weirich, and the State of Tennessee, asking this court to intervene in the same state criminal proceeding and quash an allegedly unconstitutional search warrant and subpoena. *Pro Se* Complaint, Moses v. TN Bureau of Investigation, Case No. 2:14-cv-02946-SHL-dkv (W.D. Tenn. Dec. 8, 2014). The court dismissed the complaint for lack of subject matter jurisdiction, and, alternatively, under the *Younger* abstention doctrine. Order Adopting R & R, Moses v. TN Bureau of Investigation et al, Case No. 2:14-cv-02946-SHL-dkv (W.D. Tenn. Dec. 8, 2014), ECF No. 15.

The remaining issue is whether the application of *Younger* abstention should result in a dismissal of the care or merely a stay. "Whether the plaintiff[] seek[s] a legal versus an equitable remedy controls how the district court disposes of the case after holding that the *Younger* doctrine applies to it." *Nimer*, 707 F.3d 699, 702 (6th Cir. 2013). When the plaintiff requests equitable relief, the Sixth Circuit "has consistently dismissed federal claims based on the abstention doctrine." *Clay Cnty. Manor, Inc. v. Luna*, No. 3-89-0608, 1990 WL 140464, at *4 (M.D. Tenn. June 13, 1990)(listing Sixth Circuit decisions dismissing equitable claims based on the abstention doctrine). However, when the plaintiff requests monetary relief and attorney's fees, the district court "must stay the case instead of exercising its discretion in deciding to dismiss the case." *Nimer*, 707 F.3d at 702; *Watts v. Burkhart*, 854 F.2d 839, 849 (6th Cir. 1988)(holding that the district court did not err in dismissing the plaintiff's equitable claims, but it should have stayed plaintiff's monetary claims).

Here, Moses seeks both damages and injunctive and declaratory relief. It is recommended that the court abstain from exercising jurisdiction under *Younger* and dismiss Moses's equitable claims. *See Willis v. Draper*, No. 2:09-CV-116, 2010 WL 1875704, at *1, *11, *13, *15, *19 (E.D. Tenn. May 10, 2010)(screening the complaint under 28 U.S.C. § 1915(e)(2) and

dismissing it after finding it subject to the *Younger* doctrine); *Mosby v. Baity*, No. 07-2144, 2007 WL 2351596 (same).

For the same reasons discussed herein, the court recommends denial of Moses's motion for emergency temporary restraining order and preliminary injunction, (ECF No. 6), under the *Younger* abstention doctrine. Moses's state criminal proceeding is still pending, the State "has an important interest in enforcing its criminal laws, and Moses can challenge the arrest warrants, which were based on her violation of probation, in state court.

As to Moses's monetary claims, "[b]ecause the state criminal proceeding can provide only equitable relief," she cannot assert her action for damages in such proceeding. *Deakins v. Monaghan*, 484 U.S. 193, 204 (1988). Therefore, the court must stay Moses's monetary claims instead of exercising its discretion under *Younger* to dismiss them. Nevertheless, as discussed below, Moses's monetary claims should be dismissed for failure to state a claim upon which relief can be granted.

D.   Failure to State a Claim

In her amended complaint, Moses asserts several § 1983 claims as well as various state law claims. To bring an action under section 1983, Moses must allege that she was deprived of a right secured by the Constitution or laws of the United States and that such deprivation was caused by a person acting under

color of state law.  42 U.S.C. § 1983; *Fritz v. Charter Twp. of Cornstock*, 592 F.3d 718, 722 (6th Cir. 2010).

> 1.  *Section 1983 Claim for False Detention, Arrest, and Imprisonment — Count I (Individually and on Behalf of the Class)*

In Count I, Moses alleges that the Defendants arrested, detained, and imprisoned her without reasonable suspicion or probable cause in violation of the Fourth Amendment.  (Am. Compl. ¶¶ 51-53, ECF No. 5.)  "A false arrest claim under federal law requires a plaintiff to establish that the arresting officer lacked probable cause to arrest the plaintiff." *Bach v. Drerup*, 545 F. App'x 474, 476 (6th Cir. 2013) (citing *Sykes v. Anderson,* 625 F.3d 294, 305 (6th Cir. 2010)).  "[I]t has long been settled that 'the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause.'" *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002)(quoting *Ex parte United States*, 287 U.S. 241, 250 (1932)); *see also Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 307 n.13 (6th Cir. 2005)(citing *Higgason*).  Here, according to Shelby County Criminal records, Moses was arrested pursuant to an indictment dated December 18, 2014.  Therefore, because Moses was indicted

pursuant to a determination made by the grand jury, she has no basis for a constitutional claim.[10]

Apart from her initial arrest, Moses also claims that she was falsely detained and imprisoned. (Am. Comp. ¶ 52, ECF No. 5.) A malicious-prosecution claim "encompasses wrongful investigation, prosecution, conviction, and incarceration." *Barnes v. Wright*, 449 F.3d 709, 715-16 (6th Cir. 2006)(citing *Thacker v. City of Columbus,* 328 F.3d 244, 258 (6th Cir. 2003)). Therefore, the court construes Moses's Count I to include a claim for malicious prosecution.

To set forth a § 1983 malicious-prosecution claim under the Fourth Amendment, the plaintiff must allege the following: First, a plaintiff must "allege[] . . . termination of the prior criminal proceeding in [her] favor." *Heck v. Humphrey*, 512 U.S. 477, 484 (1994)(citations omitted); *see also Wallace v. Kato*, 549 U.S. 384, 392 (2007); *Sykes v. Anderson,* 625 F.3d 294, 309 (6th Cir. 2010)(additional citations and footnote omitted);

---

[10]In Count V, Moses generally alleges that the grand jury process in Shelby County is defective because "Weirich manipulates that process and denies common citizens access to the Foreman and selective[ly] prosecutes cases and presentations to the Grand Jury." (Am. Compl. ¶ 71, ECF No. 5.) Moses additionally alleges that the "Grand Jury is on the same floor of 201 Poplar and Weirich threatens persons who attempt to present evidence of a crime without her knowledge." (*Id.*) These conclusory statements are insufficient to plausibly allege that the grand jury in Moses's case was not properly constituted.

*Catchings v. Fry*, No. 12-2329-JDT-CGC, 2013 WL 441600, at *4 (W.D. Tenn. Feb. 1, 2013)(citing *Sykes*, 625 F.3d at 309).[11] Second, the plaintiff must allege that the defendant "'ma[d]e, influence[d], or participate[d] in the decision to prosecute'" the plaintiff. *Sykes,* 625 F.3d at 308 (citing *Fox v. DeSoto,* 489 F.3d 227, 237 (6th Cir. 2007)); *McKinley v. City of Mansfield,* 404 F.3d 418, 444 (6th Cir. 2005); *Skousen v. Brighton High Sch.,* 305 F.3d 520, 529 (6th Cir. 2002); *Darrah v. City of Oak Park,* 255 F.3d 301, 312 (6th Cir. 2001); *Catchings*, 2013 WL 441600, at *4 (citing *Sykes*, 625 F.3d at 308).   Third, the plaintiff must allege that there was a "lack of probable cause for the criminal prosecution." *Sykes,* 625 F.3d at 308 (citing *Fox,* 489 F.3d at 237; *Voyticky,* 412 F.3d at 675);

---

[11]With respect to malicious-prosecution claims, the Supreme Court explained in *Heck* that:

> This requirement [that the prior criminal proceeding terminate in plaintiff's favor] "avoids parallel litigation over the issues of probable cause and guilt . . . and it precludes the possibility of the claimant [sic] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transactions.   Furthermore, to permit a convicted criminal defendant to proceed with a malicious prosecution claim would permit a collateral attack on the conviction through the vehicle of a civil suit."

*Heck*, 512 U.S. at 484 (citing 8 S. Speiser, C. Krause, & A. Gans, American Law of Torts § 28:5, p. 24 (1991)).

*Catchings*, 2013 WL 441600, at *4 (citing *Sykes*, 625 F.3d at 308). Lastly, the plaintiff must have suffered a "'deprivation of liberty,'" as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. *Sykes,* 625 F.3d at 308-09 (citing *Johnson v. Knorr,* 477 F.3d 75, 81 (3d Cir. 2007)); *see also Gregory v. City of Louisville,* 444 F.3d 725, 748-50 (6th Cir. 2006); *Catchings*, 2013 WL 441600, at *4 (citing *Sykes*, 625 F.3d at 308).

Here, Moses does not satisfy the first element of a malicious-prosecution claim. The state proceeding was not terminated in Moses's favor and Moses has filed an appeal which is currently pending. Furthermore, Moses pled guilty to the charges against her. Moses's claim in the instant action that there was no probable cause for her arrest and detention is thus inconsistent with her entry of a guilty plea in state court. It is unnecessary for the court to analyze the remaining elements of her claim. Therefore, Moses's § 1983 claim for malicious-prosecution must be dismissed for failure to state a claim for which relief may be granted.

2.   *Section 1983 Claims for Violations of First Amendment Rights — Count II & Count X (Individually and on Behalf of the Class)*

In Count II, Moses seems to allege that the Defendants detained, arrested, and imprisoned Moses because she exercised her First Amendment rights. (Am. Compl. ¶¶ 54-55, ECF No. 5.)

22

"[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006)(citing *Crawford-El v. Britton*, 523 U.S. 574, 592 (1998)). "[W]hen nonretaliatory grounds are in fact insufficient to provoke the adverse consequences," the plaintiff is subject to recovery for retaliatory prosecution if retaliatory animus is the "but-for cause" of the adverse government action. *Id.; see also Greene v. Barber*, 310 F.3d 889, 897 (6th Cir. 2002)("[W]here constitutionally protected speech is 'a motivating factor' in a governmental action adverse to the plaintiff, the adverse action is unconstitutional . . . *unless the same action would have been taken 'even in the absence of the protected conduct*.'" (quoting *Mount Healthy Bd. of Ed. v. Doyle*, 429 U.S. 274, 287 (1977))); *McKinney v. Fields*, No. 07-CV-10652, 2009 WL 816886, at *5 (E.D. Mich. Mar. 27, 2009).

In Count II, Moses conclusory alleges that the Defendants arrested and detained her because she exercised her First Amendment rights; however, she makes no allegations that she engaged in any protected speech. It is unclear therefore how Moses was exercising her "right to [] speech" or "right to freedom of association." (Am. Compl. ¶ 55, ECF No. 5.) Because Moses has not pled that she engaged in any protected speech, the

Defendants' actions cannot have been motivated, even in part, by Moses's exercise of her First Amendment rights.   Therefore, the court recommends that Moses's Count II be dismissed for failure to state a claim for which relief may be granted.

In Count X, Moses alleges *inter alia* that the Defendants discriminated and retaliated against her because she filed ethic complaints against county employees.   (Am. Compl. ¶ 95, ECF No. 5.)   It appears that the Defendants' alleged retaliatory act was that they did not hire Moses after she applied for employment with the Shelby County government.   (*Id.*)   Moses claims that the Defendants' conduct violated 42 U.S.C. § 1983 because they retaliated against her after she engaged in protected First Amendment activity.   (*Id.* at 26 ¶ 96.)

Moses's allegations fall short of *Twombly* and *Iqbal's* plausibility standard.   Moses has not alleged when she filed the ethics complaints or to whom those complaints were directed. Moses has also not alleged when she applied for employment with Shelby County government, what job she applied for, or whether she was qualified for the applied position.   It is impossible to infer from the scarcity of the factual allegations that the Shelby County defendants did not hire Moses due to retaliatory animus.   Therefore, the court recommends that Moses's § 1983 claim for retaliation set forth in Count X be dismissed for failure to state a claim.

3. *Section 1983 Claim for Excessive Force and 18 U.S.C. § 242 Claim for Deprivation of Rights — Count III (Individually)*

In Count III, Moses alleges defendants Weirich, Oldham, and Moore used excessive force in violation of the Fourth Amendment. (Am. Compl. ¶ 57, ECF No. 5.)  In paragraph 57 of her amended complaint, Moses lists Weirich, Oldham, and Moore as defendants in this claim, but in the following paragraph she alleges that only defendant Oldham forced Moses "with guns to go with them" and "deliberately [and] intentionally handcuff[ed] [her] wrists too tightly." (*Id.* ¶ 58.)

The Fourth Amendment "requires that the officer's use of force be objectively reasonable, balancing the cost to the individual against the government's interests in effecting the seizure." *Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002)(citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  "This standard contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Id.* (citing *Graham*).  "Proper application of this standard of reasonableness requires close attention to the facts and circumstances of the particular case, including 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by

flight.'"  *Ingram v. City of Columbus*, 185 F.3d 579, 596 (6th Cir. 1999)(quoting *Pleasant v. Zamieski,* 895 F.2d 272, 276 (6th Cir. 1990).   Detaining suspects using guns can be found to violate the Fourth Amendment.  *See Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010); *Ingram v. City of Columbus*, 185 F.3d 579, 598 (6th Cir. 1999).

Accepting Moses's allegations as true, as it must for the purpose of screening, the court finds that Moses does not sufficiently state an excessive-force claim.   In the "factual allegations" section of the complaint, Moses makes no factual allegations that defendant Oldham appeared at her home and arrested her.   Rather, Moses states that "a uniformed SCSO" went into her house and arrested her.   (Am. Compl. 10, ECF No. 5.) Furthermore, Moses does not allege that the SCSO had a gun. Even if the unidentified SCSO used a gun unreasonably to detain Moses, Oldham, the listed defendant in this case, may not be held responsible under the *respondeat superior* doctrine for the actions of the SCSO.  *Combs v. Wilkinson*, 315 F.3d 548, 558 (6th Cir. 2002)(holding that "§ 1983 liability will not be imposed on the basis of respondeat superior" against supervisory officers based on conduct by unidentified officers); *Rogers v. Detroit Police Dep't*, 595 F. Supp. 2d 757, 773 (E.D. Mich. 2009)("Section 1983 liability must be based on more than respondeat superior, or the right to control employees.").

As to handcuffing, the Fourth Amendment prohibits unduly tight handcuffing in the course of an arrest. *Lyons v. City of Xenia*, 417 F.3d 565, 575 (6th Cir. 2005) (citations omitted). "Not all allegations of tight handcuffing, however, amount to excessive force . . . [and] the plaintiff must allege some physical injury from the handcuffing, and must show that officers ignored plaintiff's complaints that the handcuffs were too tight." *Id.* at 575-76. The complaint in this case contains no factual allegations that Moses suffered any bodily injury specifically attributed to the handcuffing. Further, Moses does not allege that she complained about the handcuffs or that the officers ignored such complaints. Therefore, the court recommends that Moses's excessive-force claim be dismissed for failure to state a claim upon which relief may be granted.

In Count III, Moses also alleges that Weirich, Oldham, and Moore deprived her "rights, privileges, or immunities secured []" by the Constitution or laws of the United States," in violation of 18 U.S.C. § 242. (Am. Compl. ¶ 57, ECF No. 5.) Federal statute 18 U.S.C. § 242, which is the criminal analogue to 42 U.S.C. § 1983 prohibiting deprivation of civil rights under color of state law, does not provide a basis for civil liability. *Krajicek v. Justin*, 178 F.3d 1294, at *1 (6th Cir. 1999); *Riser v. WSYX-TV ABC-6*, No. C2-02-091, 2002 WL 31409427, at *8 (S.D. Ohio July 17, 2002). Therefore, because § 242 does

not provide a private cause of action, the court recommends that Moses's § 242 claim be dismissed for failure to state a claim upon which relief may be granted.

4. *Section 1983 Claim for Deliberate Indifference to Medical Needs — Count IV (Individually and on Behalf of the Class)*

In Count IV, Moses asserts a claim of deliberate indifference toward her medical needs as to defendant Moore. (Am. Compl. ¶¶ 60-61, ECF No. 5.) Moses alleges that Moore ignored Moses's medical needs "when she fell and was dizzy," and refused to take her to see a doctor in a timely manner. (*Id.* ¶ 61.) Further, Moses alleges that Moore "exacerbate[ed] the pain and injury by further imposing other arbitrary unreasonable and punitive conditions holding her in solitary confinement." (*Id.*)

The Fourteenth Amendment Due Process Clause forbids prison officials from "unnecessarily and wantonly inflicting pain" on a pretrial detainee with "deliberate indifference" towards the detainee's serious medical needs. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004). A prison official's deliberate indifference is manifested when he intentionally denies or delays access to medical care for a serious medical need. *Id.* (citation and internal citations omitted). "A constitutional claim for denial of medical care has objective and subjective components." *Id.* (citing *inter alia Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "The objective component

requires the existence of a 'sufficiently serious' medical need." *Id.* (quoting *Farmer*). A medical need is objectively serious if it is "one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* at 897 (citations omitted). "The subjective component requires an inmate to show that prison officials have 'a sufficiently culpable state of mind in denying medical care.'" *Id.* at 895 (citing *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)).

Moses has not alleged sufficient facts that, if proven, would show that Moore acted with "deliberate indifference" towards Moses's medical needs. As to the objective component, Moses has not alleged a sufficiently serious medical need which created a substantial risk of serious harm or unnecessary pain and suffering when left untreated. In fact, Moses has not stated any specific injuries other than alleging that she was dizzy after she fell. She has not alleged the existence of verifying medical evidence of her injury and her alleged injury is not so obvious that even a lay person would easily recognize the necessity of medical treatment. *Cf. Gonzalez v. Lusardi*, 930 F. Supp. 2d 840, 855-56 (E.D. Ky. 2013)(finding that an arrestee's black eye was not a sufficiently serious medical need

to support a claim of deliberate indifference toward his serious medical needs).

As to the subjective component, there is nothing in the complaint to indicate that Moore had a "sufficiently culpable state of mind" in denying medical care. It is unclear from the complaint what injuries she complained of and whether Moore had reason to believe that Moses required medical attention. Therefore, Moses's allegations are insufficient to plausibly state a § 1983 claim for deliberate indifference to her medical needs and the court recommends dismissal of this claim.

5.   *Section 1983 Municipal Liability Claim — Count V (Individually and on Behalf of the Class)*

In Count V, Moses alleges that the City of Memphis's policies, practices, and customs deprived Moses of her constitutional rights. (Am. Compl. ¶¶ 62-78, ECF No. 5.) Under § 1983, a plaintiff may only sue a municipality for its own misconduct and cannot bring suit under the theory of *respondeat superior*. *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 692-94 (1978); *see also Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the

30

municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-480 (1986)).

Proper municipal liability analysis requires the court to consider two different separate issues: "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." *See Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). As to the second issue, the plaintiff must show that an "official policy or custom actually serves to deprive an individual of his or her constitutional rights," *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006), or that "such actions emanate from informal governmental custom," *Alman v. Reed*, 703 F.3d 887, 902 (6th Cir. 2013). Further, the plaintiff must demonstrate that the municipal policy has a direct causal link to the alleged constitutional deprivation by (1) identifying the municipal policy or custom, (2) connecting the policy to the municipality, and (3) showing that his injury was caused by the execution of that policy. *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003). In sum, the municipal policy must be the "moving force" behind the alleged injury. *Id.* at 817.[12]

_____

[12]A § 1983 claim against a municipality may also be based on the municipality's failure to train its officers. Such a claim must show:

Here, the court has recommended dismissal of all of Moses's § 1983 claims for failure to state a claim upon which relief may be granted.  Therefore, *Collins's* first prong, i.e. that Moses's harm, if any, was caused by a constitutional violation, is not satisfied here.  *See Collins*, 503 U.S. at 120.  Nevertheless, even assuming that Moses suffered a constitutional violation, she has not plausibly alleged the existence of a policy, custom, or practice that can be attributed to a municipal policymaker. Although Moses's instant claim is directed to all the Defendants, Moses's allegations only pertain to the conduct of MPD and Weirich.

As to the MPD, Moses alleges the existence of the following three policies, practices, and customs:

> (a) the MPD's "failure to properly train, supervise, discipline, transfer, monitor, counsel and otherwise control police officers engaged in committing violations of police department rules and regulations, including the excessive force, false detentions, false arrests, false imprisonments, the harassment of civilians exercising their First Amendment Rights in Social Media, complete disregard and willful violation of MPD's arrest policies, and the manufacturing of

---

> (1) that the [municipality] pursued an official custom or policy of failing to adequately train, supervise, or discipline its officers in a particular matter, and (2) that such official policy or custom was adopted by the official makers of policy with "deliberate indifference" towards the constitutional rights of persons affected by the policy or custom.

*Haverstick Enter. v. Fin. Fed. Credit*, 32 F.3d 989, 996 n.8 (6th Cir. 1994)(citing *City of Canton v. Harris*, 489 U.S. 378, 387-88 (1989)).

> false reports and statements as well as the physical
> and verbal abuse of civilians, and other police abuse,
> particularly in cases where the officers have
> repeatedly been accused of said acts;
> (b) the police code of silence, particularly in cases
> where officers engaged in the above articulated
> violations; and
> (c) encouragement of false detentions, false arrests,
> false imprisonments, and the use of excessive force
> for any citizen who speaks out against the public
> corruption of the Shelby County Government.

(Am. Compl. ¶ 65, ECF No. 5.) Moses's allegations as to MPD's misconduct, which are based on informal government custom rather than an official policy or custom, are so sweeping that they border on frivolousness. Without any supporting facts, Moses essentially alleges that the MPD consistently violates multiple sections of the United States Constitution. Moses does not include any facts related to the above-alleged policies or customs beyond her own singular experience, which, as discussed above, the court has found legally insufficient to state any claims under section 1983. Moses does not invoke any discernable policy, custom, or usage that resulted in constitutional violations; her blanket allegations are mere speculation. *See Molton v. City of Cleveland*, 839 F.2d 240, 246 (6th Cir. 1988)("The Supreme Court authorities . . . require proof of a deliberate and discernible city policy to maintain an inadequately trained police department, or nonsuicide-proof, inadequately designed and equipped jails; not mere speculation . . . .").

As to Weirich, Moses alleges that Weirich engages in a practice of manipulating the grand jury process, fabricating evidence, and pursuing false arrests and prosecutions. (Am. Compl. ¶¶ 70-71, ECF No. 5.) Moses's allegations as to Weirich are insufficient to plausibly allege the existence of an official city policy of violating Moses's constitutional rights because "state prosecutors' actions in prosecuting state crimes cannot themselves establish municipal policy." *D'Ambrosio v. Marino*, 747 F.3d 378, 387 (6th Cir. 2014)(citing *Pusey v. City of Youngstown*, 11, F.3d 652, 659 (6th Cir. 1993)); *Cady v. Arenac Cnty.*, 574 F.3d 334, 342-43 (6th Cir. 2009)(holding that county attorneys are responsible for enforcing criminal laws on behalf of the state and therefore act as state agents when prosecuting state criminal charges); *see also* Tenn. Code Ann. § 8-7-103(1)(stating that a county prosecutor is responsible for prosecuting "all violations of the [Tennessee] criminal statutes"). Weirich was acting on behalf of the State of Tennessee when she prosecuted Moses's state criminal charges, therefore her actions cannot not be attributed to the City of Memphis.

For these reasons, Moses has not plausibly pled a *Monell* cause of action against the City.

    6.   *Retaliation and Discrimination Claim — Count X (Individually and on Behalf of the Class)*

In Count X, Moses alleges that she "appl[ied] for employment with the Shelby County Government and filed ethic complaints against county employees for specific violations." (Am. Compl. ¶ 95, ECF No. 5.)   Although nebulously stated, it appears that Moses claims that the Defendants retaliated and discriminated against her by not hiring her because she filed ethic complaints against Shelby County employees.   Moses alleges that the Defendants' action violated 5 U.S.C. §§ 2302(b)(8), (b)(9), 42 U.S.C. § 1983,[13] 18 U.S.C. § 1514A, and 42 U.S.C. § 12203(c).   (*Id.* ¶¶ 96, 97.)

5 U.S.C. §§ 2302(b)(8) and (b)(9) are sections of the Civil Service Reform Act enacted in 1978, 5 U.C.S. § 1101 *et seq.*   The Act "establishes a framework for evaluating personnel actions taken against federal employees." *Kloeckner v. Solis*, 133 S. Ct. 596, 600 (2012).   Section 2302(b)(8) prohibits a federal government employee from taking a personnel action[14] with respect to an applicant for employment because of the applicant's disclosure of any violation of law, rule, or regulation. Section 2302(b)(9) prohibits a federal government employee from, *inter alia*, taking a personnel action with respect to an applicant for employment because of the applicant's filing of a

---

[13]The court previously recommended dismissal of Moses's § 1983 First Amendment claims. *See supra* Section II.D.2.

[14]Notably, the term "personal action" does not include failure to hire. *See* 5 U.S.C. § 2302(a)(2).

complaint or grievance.  These sections are clearly inapplicable to the instant case because no personnel action was taken by the federal government against Moses.

18 U.S.C. § 1514A is inapplicable in this case because this federal statute protects employees of publicly traded companies from retaliation for whistleblowing.  None of the Defendants in this case is a publicly traded company, and, therefore, Moses's § 1514A claim fails as a matter of law.

Lastly, 42 U.S.C. § 12203 prohibits retaliations against individuals with disabilities because such individual's filing of a charge alleging unlawful acts or practices.  This federal statute is inapplicable because Moses has not alleged that she is an individual with disabilities.

For the foregoing reasons, the court recommends dismissal of Moses's claims alleged in Count X for failure to state a claim for which relief may be granted.

   7.  *Moses's State Law Claims — Counts VI through IX (Counts VI, VII, and IX are Brought by Moses Individually and on Behalf of the Class; Count VIII is Brought Only by Moses)*

In Count VI, Moses alleges that the Defendants denied Moses her constitutional rights to be secure in her person, to be free from unreasonable searches, to speak, write, and publish freely, to due process of law and equal protection of the laws as

36

provided by the Tennessee Constitution, Article 1, sections 1, 2, 4, 5, and 6.  (Am. Compl. ¶ 80, ECF No. 5.)

     As an initial matter, the above-listed sections of the Tennessee Constitution are inapplicable here.  Section 1 of Article 1 provides that "all power is inherent in the people, and all free governments are founded on their authority, and instituted for their peace, safety, and happiness; for the advancement of those ends they have at all times, an unalienable and indefeasible right to alter, reform, or abolish the government in such manner as they may think proper."  Tenn. Const. art. I, § 1.  Section 2 provides that "government being instituted for the common benefit, the doctrine of non-resistance against arbitrary power and oppression is absurd, slavish, and destructive of the good and happiness of mankind."  Tenn. Const. art. I, § 2.  Section 4 provides that "no political or religious test, other than an oath to support the Constitution of the United States and of this State, shall ever be required as a qualification to any office or public trust under this State."  Tenn. Const. art. I, § 4.  Section 5 provides that "[t]he elections shall be free and equal, and the right of suffrage, as hereinafter declared, shall never be denied to any person entitled thereto, except upon conviction by a jury of some infamous crime, previously ascertained and declared by law, and judgment thereon by court of competent

jurisdiction." Tenn. Const. art. I, § 5. Finally, section 6 provides that "the right of trial by jury shall remain inviolate, and no religious or political test shall ever be required as a qualification for jurors." Tenn. Const. art. I, § 6. None of these sections of the Tennessee Constitution provide a basis for Moses's claims.

Rather, Moses's unreasonable search claim is based on the Tennessee Constitution's search and seizure provision which provides that "people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures." Tenn. Const. art. I, § 7. Further, Moses's freedom of speech claim is based on the Tennessee's Constitution's freedom of speech and press provision, Tenn. Const. art. I, § 19. Here, however, Moses has not alleged that a search occurred, let alone that one was unreasonable. Similarly, it is unclear how the Defendants denied Moses the right to "speak, write and publish" because she has not alleged that she engaged in any of such activities. Therefore, the court recommends that Moses's Count VI claims be dismissed for failure to state a claim upon which relief may be granted.

In Count VII, Moses alleges that the Defendants falsely detained, arrested and imprisoned her. (Am. Compl. ¶ 82, ECF No. 5.) "[F]alse imprisonment requires that the defendant must have acted without probable cause." *Brown v. SCOA Indus., Inc.*,

741 S.W.2d 916, 920 (Tenn. Ct. App. 1987). Moses has not successfully pled that there was an absence of probable cause for her arrest. Moses was arrested pursuant to a warrant and Moses has not raised any issues with the validity of the arrest warrant. *See Sullivan v. Young*, 678 S.W.2d 906, 910 (Tenn. Ct. App. 1984)(citations omitted) ("In this case there is no issue about the validity of the arrest warrant which was effected. The arrest of the plaintiff was, therefore, pursuant to lawful authority, and the action here is not one for false arrest."). Further, as stated previously, the fact that Moses pled guilty to her state criminal charges belies any assertion that she was arrested without probable cause.

In Count VII, Moses also purports to bring a claim for negligence but does not otherwise state any facts indicating what conduct constitutes negligence. Although Moses is proceeding *pro se*, the court is not required to create Moses's claims for her. *Payne*, 73 F. App'x at 837; *Pliler*, 542 U.S. at 231 ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."). Therefore, the court recommends that Moses's Count VII claims be dismissed.

In Count VIII, Moses alleges that the Defendants engaged in malicious prosecution by knowingly and maliciously creating a false story and fabricating the claims against her. (Am. Compl. ¶ 85, ECF No. 5.) To successfully plead a claim for malicious

prosecution, Moses must "establish that a criminal proceeding has been instituted by the [D]efendants against [her], that such proceeding terminated in favor of [Moses], that there was an absence of probable cause, and that there was malice or a primary purpose other than that of bringing the offender to justice." *Sullivan*, 678 S.W.2d at 911 (citations omitted). Here, Moses has failed to plead every prong of her malicious-prosecution claim. Moses's criminal proceeding was not terminated in her favor, Moses has not successfully pled the absence of probable cause, and there are no facts in the complaint from which the court can infer malice in the state prosecution. Therefore, the court recommends that Moses's Count VIII claim be dismissed.

In Count IX, Moses alleges that the Defendants conspired to initiate a bogus indictment against her and falsely arrest and prosecute her. (Am. Compl. ¶¶ 86-93, ECF No. 5.) Moses alleges that in furtherance of this conspiracy, the Defendants falsified documents, manufactured evidence, filed false and incomplete statements and reports, and falsified signatures. (*Id.*)

The elements of a cause of action for civil conspiracy under Tennessee law are as follows: "(1) a common design between two or more persons; (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means; (3) an overt act in furtherance of the conspiracy; and (4) resulting

injury." *Morgan v. Brush Wellman, Inc.*, 165 F. Supp. 2d 704, 720 (E.D. Tenn. 2001)(citing *Menuskin v. Williams*, 145 F.3d 755, 770 (6th Cir. 1998)).  "In addition, civil conspiracy requires an underlying predicate tort allegedly committed pursuant to the conspiracy." *Freeman Mgmt. Corp. v. Shurgard Storage Ctrs., LLC*, 461 F. Supp. 2d 629, 642 (M.D. Tenn. 2006)(citation omitted).

Moses's conspiracy claim is again premised on her assertion that the Defendants manufactured the entire prosecution against her.  First, Moses has not plausibly plead that there was a common plan or design between the Defendants to accomplish an unlawful purpose.  Moses's bare assertion that there was such a common plan or design is a legal conclusion, and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  Further, Moses alleges that pursuant to this conspiracy she was falsely arrested/detained and maliciously prosecuted.  However, the court has previously dismissed such claims, and, therefore, Moses has not pled an "underlying predicate tort allegedly committed pursuant to the conspiracy." *Id.* at 642-43.  In short, the conspiracy claim in this case is completely without substance and the court recommends dismissal of such claim.

In the alternative, it is recommended that the court decline to exercise supplemental jurisdiction over Moses's state law claims. Under 28 U.S.C. § 1367(c)(3), district courts may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction. In the Sixth Circuit, the policy is that "'[i]f federal claims are dismissed before trial, the state claims generally should be dismissed as well.'" *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) (quoting *Wojnicz v. Davis*, 80 F. App'x 382, 384-85 (6th Cir. 2003)). The court has original jurisdiction only over Moses's claims arising under federal law,[15] and because the court recommended dismissal of those claims, the court should decline to exercise supplemental jurisdiction over Moses's state law claims. Accordingly, in the alternative, the court recommends that Moses's state law claims be dismissed for lack of subject-matter jurisdiction.

### III.  MOSES'S REQUEST FOR CLASS CERTIFICATION

In her amended complaint, Moses includes a request to have this lawsuit certified as a class action. Within the framework of Federal Rule of Civil Procedure 23, the district court has broad discretion in determining whether an action should be

---

[15]Moses's amended complaint does not indicate that she is seeking to invoke the court's diversity jurisdiction under 28 U.S.C. § 1332. In fact, there is no complete diversity between the parties because Moses and the Defendants are citizens of Tennessee.

certified as a class action. *Craft v. Vanderbilt Univ.*, 174 F.R.D. 396, 401 (M.D. Tenn. 1996) (citing *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988)). Before certifying a class, district courts must conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are met. *In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1078-79 (6th Cir. 1996) *quoting General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982). There are four prerequisite in Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Moses cannot certify this action as a class action for multiple reasons. First of all, Moses, who seeks to represent the class, has failed to provide a valid definition of the class. "To maintain a class action, the existence of the class must be pleaded and the limits of the class must be defined with some specificity." *Newsom v. Norris,* 888 F.2d 371, 381 (6th Cir. 1989)(quotation omitted). Moses seeks to form a class consisting "of all persons who were detained and arrested by the Defendants on or after December 18, 2014." (Am. Compl. ¶ 21, ECF No. 5.) Such a general definition of a class, which,

notably, continues to grow daily, does not conform to the specificity requirement.

Nor has the third prerequisite for class certification, also known as the typicality prerequisite, been satisfied. Moses, as a class representative must show that she and the absent class members have suffered the same injury. Here, Moses submits that *all* people who were arrested after December 18, 2014 suffered constitutional violations. (*See* Am. Compl. ¶ 21, ECF No. 5.) Such a conclusion is clearly far-fetched; the class is defined so broadly that it is likely to include persons who suffered no detriment at all due to the Defendants' conduct. "Where a class definition encompasses many individuals who have no claim at all to the relief requested, or where there are defenses unique to the individual claims of the class members, the typicality premise is lacking, for — under those circumstances — it cannot be said that a class member who proves his own claim would necessarily prove the claims of other class members." *Romberio v. Unumprovident Corp.*, 385 F. App'x 423, 431 (6th Cir. 2009); *see also Kohen v. Pacific Inv. Mgmt. Co. LLC,* 571 F.3d 672, 677 (7th Cir. 2009) ("[A] class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant."); *Cleary v. Philip Morris USA, Inc.*, 265 F.R.D. 289, 293 (N.D. Ill. 2010)(stating that "the likelihood that some

significant proportion of class members experienced no injury at all," defeats the typicality prerequisite).  Typicality is thus lacking here because Moses's purported class would indisputably contain a great number of people who experienced no constitutional violations.

As to the fourth prerequisite for class certification, Moses will not fairly and adequately represent the interests of the class.  First, the court has recommended dismissal of all of Moses's claims.  "[I]n the absence of typical claims, [Moses] has no incentives to pursue the claims of the other class members." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996).  Therefore, Moses would not fairly and adequately represent the class's various constitutional claims.  Moreover, Moses is proceeding *pro se* and "non-attorneys proceeding *pro se* cannot adequately represent a class." *Ziegler v. State of Michigan*, 90 F. App'x 808, 810 (6th Cir. 2004)(citing *Fymbo v. State Farm Fire & Cas. Co.,* 213 F.3d 1320, 1321 (10th Cir. 2000)).  For these reasons, Moses's request for class certification is denied.

III. CONCLUSION

For the foregoing reasons, it is recommended that the court abstain from exercising jurisdiction over Moses's claims for declaratory and injunctive relief.  Further, the court recommends that Moses's remaining federal and state claims be

dismissed *sua sponte* for failure to state a claim pursuant to Rule 12(b)(6) and 28 U.S.C. § 1915(e)(2)(ii) on which relief may be granted.

Lastly, the court denies Moses's request for class certification.

Respectfully submitted this 19th day of January, 2016.

s/Diane K. Vescovo
DIANE K. VESCOVO
UNITED STATES MAGISTRATE JUDGE

NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.